## Case No. 15,513.

UNITED STATES v. KELLERMAN.

[See Case No. 13,846.]

## Case No. 15,514.

UNITED STATES v. KELLY.

[3 Sawy. 566.] [1]

Circuit Court. D. Nevada. March 22, 1876.

MAILING QUACK MEDICAL ADVERTISEMENTS — INDICTMENT.

1. Knowingly depositing in the United States mail by the publisher, a newspaper, containing a quack medical advertisement giving information, how and where, articles for the production of abortion and prevention of conception could be obtained, held, to be a violation of section 3893 of the Revised Statutes of the United States.

2. Such advertisement as published in the defendant's paper, and set out in the statement of the case, held, to give information how, where, and of whom, articles designed to produce abortion, and for the prevention of conception could be procured.

3. It is not necessary that the advertisement should indicate, or the indictment allege, any particular article or thing or its properties.

4. The statute forbids the use of the mails for carrying any advertisement giving information where articles designed for producing abortions and the prevention of conception can be obtained or made; the indictment charged in the conjunctive "obtained and made," and it was held good, and that proof of either would be sufficient.

The defendant [E. D. Kelly], the publisher of a newspaper, was indicted under section 3893 of the United States Revised Statutes, for knowingly mailing a newspaper containing an advertisement giving information where, how, and of whom, articles and things designed for the procuring of abortion and the prevention of conception could be obtained and made. The advertisement was set out in the indictment. It purports to be that of one Doctor W. K. Dougherty. It gives his name, the location and number of his office, and then says: "Established especially to afford the afflicted sound and scientific medical aid in the treatment and cure of all private and chronic diseases, cases of secrecy, and all sexual disorders." After enumerating a number of sexual diseases, he says that "all parties consulting him by letter or otherwise, will receive the best and gentlest treatment and implicit secrecy." Under the heading "To Females," he says:, "When a female is in trouble, or afflicted with any of the diseases peculiar to her sex, she should go or write at once to the celebrated female doctor, W. K. Dougherty, at his medical institute, and consult him about her trouble and diseases. All married ladies, whose delicate health or other circumstances prevent an increase in their families, should write or call at W. K. Dougherty's medical institute, and they will receive every possible relief and help. The doctor's offices, consisting of a suite of six rooms, are so arranged that he can be consulted without fear of observation. To correspondents, patients (male or female) residing in any part of the state, however distant, who may desire the advice and opinion of Doctor Dougherty in their respective cases, and who think proper to submit a written statement of such in preference to holding a personal interview, are respectfully assured that their communications will be held most sacred and confidential. If the case be fully and candidly described, personal communication will be unnecessary, as instructions for diet, regimen, and the general treatment of the case (including the remedies), will be forwarded without delay, and in such manner as to convey no idea of the purport of the letter or parcel so transmitted." The defendant demurred to the indictment upon the ground that this advertisement did not contain any of the forbidden matters, and upon other grounds stated in the opinion.

Charles S. Varian, U. S. Atty.
Robert M. Clarke, for defendant.

SAWYER, Circuit Judge. We think, upon examination, that there can be no doubt as to what anybody would understand from this advertisement. In it the doctor has particularly included and pointed out all diseases,

[1] [Reported by L. S B. Sawyer, Esq., and here reprinted by permission.]

private and otherwise, and then he refers to "other troubles." He refers to any occasion why an increase of family should not be desired. It is true he has not used the word "prevent." He has been very cautious; but what, evidently, is the meaning intended to be conveyed? He does not use language so direct as he might possibly have done, but if the advertisement gives the forbidden information indirectly, it is as much within the prohibition of the law as if it were given in direct terms. It appears to us that the information prohibited by law is undoubtedly furnished. No one who desired to find a party with whom to confer as to these remedies, or from whom to receive advice with regard to procuring abortion or the prevention of conception, would have any difficulty in understanding that this party, W. K. Dougherty, had given notice that he could and would give that advice, and furnish those remedies. The language of this advertisement must be understood as its author intended it should be. Chief Justice Shaw thus states the doctrine of intent: "It is a general rule of construction in actions of slander, indictments for libel, and other analogous cases, where an offense can be committed by the utterance of language, orally or in writing, that the language shall be construed and understood in the sense in which the writer or speaker intended it. If, therefore, obscure and ambiguous language is used, or language which is figurative or ironical, courts and juries will understand it according to its true meaning and import, and the sense in which it was intended, to be gathered from the context, and from all the facts and circumstances under which it was used." Com. v. Kneeland, 20 Pick. 206; 1 Bish. Cr. Law, § 914.

"In like manner the form of the libel is immaterial; for if the language is ironical, or is otherwise so framed as not to convey directly the idea meant, yet, if it is adapted to accomplish the evil purpose it is sufficient." 1 Bish. Cr. Law, § 915. Hawkins adds, "that a defamatory writing expressing only one or two letters of a name in such a manner that, from what goes before and follows after, it must needs be understood to signify such a particular person, in the plain, obvious, and natural construction of the whole, and would be perfect nonsense if strained to any other meaning, is as properly a libel as if it had expressed the whole name at large; for it brings the utmost contempt upon the law to suffer its justice to be eluded by such trifling evasions: and it is a ridiculous absurdity to say that a writing which is understood by every, the meanest, capacity, cannot possibly be understood by a judge and jury." Id. It seems to us that this language is particularly applicable to this case. Is it possible to doubt that the language of this advertisement is so framed as to convey, if not directly the idea meant, at least indirectly, or that it accomplishes the evil purposes sought to be avoided by the statute? Is it possible for anybody to read this advertisement and not understand that he can find medicine, advice, and treatment at the place mentioned, for the purposes which are by the statute forbidden? We think that no private party in search of such remedies, and no judge or juror would be at a loss to understand the meaning of this advertisement, however cautiously worded to escape the penalty of the law. Indeed, we think the information prohibited by statute is directly conveyed.

It was further said, in objection to this indictment, that some particular article or thing should be specifically described in the advertisement mailed, and that none is so described. We do not think it necessary that any particular article, or its specific properties, should be indicated in the advertisement. W. K. Dougherty advertises that he will not only give advice, but furnish the remedies to accomplish the forbidden purposes. He does not point out the remedies specifically, and state what they are; and it is not necessary that he should do so. It is sufficient if he advertises that the remedies can be furnished by him, and where and under what circumstances they can be obtained. We think the language used is sufficiently specific to sustain the indictment. This law was not passed without an occasion for it. Usually statutes are not passed to meet an emergency until an emergency arises, or is anticipated in some way. It is not to be expected that a quack doctor will advertise in plain express terms, that he will furnish the means for the prevention of conception, or to procure abortion. Such an advertisement probably never has been, and never will be, published. It is doubtful if any one more specific than this has ever been published. Undoubtedly advertisements of this character have been published for many years, extensively; and to meet this class of cases, among others, the statute was passed. If this advertisement does not fall within the purview of the statute, it may well be regarded as a useless enactment. It will certainly fail to accomplish the purposes intended.

This indictment charges the defendant with mailing a paper which gave information where the remedies or article or thing could be "obtained and made." It is claimed that it is insufficient on that ground, whatever the proof may be. We do not think it necessary to prove the conjunctive. Two cases were cited by defendant's counsel, which were supposed by him to sustain his views, but we do not think his position is sustained by those cases; on the contrary, the authorities cited, properly considered, are against him. "Thus," says Mr. Bishop, "if the charge is that the defendant did such and such things to the disturbance of a public meeting, so much of those specific things must appear in the evidence to

have been done as were necessary to constitute the offense, it not being permissible to show, instead, other acts of disturbance which would have been sufficient had they been alleged." Bish. Cr. Proc. § 234. "And where a statute made it an offense to be a common seller of 'spirituous or intoxicating liquors,' without license, and the defendant was charged with being such common seller of 'spirituous and intoxicating liquors,' it was held that, though proof of the liquor being either spirituous or intoxicating, would satisfy the demands of the statute; yet to meet the allegation of the indictment it must be shown to be both." Id. That is very true in that case. The words spirituous and intoxicating describe the particular liquors—they are descriptive of the liquors, i. e., those liquors were both spirituous and intoxicating. See, also, Bish. Cr. Proc. § 336. The proof of a sale of spirituous but not intoxicating, or intoxicating but not spirituous liquors, would not establish the sale of the kind of liquors alleged, and thus there would be a variance.

In this case the statute makes it an offense to mail a notice showing where, or how, or of whom, or by what means the articles may be obtained or made; but the indictment alleges it in the conjunctive, "where they may be had and made." The proof of either is an offense, and proof of either would be sufficient to support the charge made in the indictment. This, however, is a question of proof which does not affect the decision on demurrer.

We are of the opinion that the indictment is good, and that the demurrer should be overruled.