## Case No. 16,688.

### UNITED STATES v. WHITTIER.

[5 Dill. 35; 18 Alb. Law J. 110; 6 Reporter, 260; 10 Chi. Leg. News, 229; 24 Int. Rev. Rec. 126, 234; 7 Cent. Law J. 51; 2 Tex. Law J. 166.] [1]

Circuit Court, E. D. Missouri. March 30, 1878.

POSTAL LAWS AS TO OBSCENE LITERATURE CONSTRUED.

1. The act of congress of July 12, 1876 (19 Stat. 90), in respect to mailing obscene books, etc., construed, and *held* not to extend to the case of a sealed letter written by the defendant to a person who had no existence, in answer to a decoy letter of a detective, and which on its face gives no information of the prohibited character.

[Cited in U. S. v. Reese, Case No. 16,137; U. S. v. Williams, 3 Fed. 491; U. S. v. Kaltmeyer, 16 Fed. 763; U. S. v. Denicke, 35 Fed. 409; U. S. v. Rapp, 30 Fed. 822; U. S. v. Mathias, 36 Fed. 895; U. S. v. Huggett, 40 Fed. 637; U. S. v. Garretson, 42 Fed. 25; U. S. v. Kelsey, Id. 887. Followed in U. S. v. Bethea, 44 Fed. 802; U. S. v. Grimm, 45 Fed. 560. Cited in U. S. v. Grimm, 50 Fed. 531; U. S. v. Dwyer, 56 Fed. 467; U. S. v. Wilson, 58 Fed. 771. Followed in U. S. v. Adams, 59 Fed. 674, 676, 677. Cited contra in Grimm v. U. S., 156 U. S. 610, 15 Sup. Ct. 472.]

[Cited in Connor v. People (Colo. Sup.) 33 Pac. 161; People v. Hanselman, 76 Cal. 464, 18 Pac. 426.]

2. The cases in which it is allowable to make use of decoy letters discussed.

[Cited in U. S. v. Rapp, 30 Fed. 822; U. S. v. Wight, 38 Fed. 109.]

This is an indictment founded on an act of congress, approved July 12, 1876 (19 Stat. 90), which provides that: "Every obscene, lewd, or lascivious book, pamphlet, picture, paper, writing, print, or other publication of an indecent character, and every article or thing designed or intended for the prevention of conception or procuring of abortion, and every article or thing intended or adapted for any indecent or immoral use, and every written or printed card, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where or how, or of whom, or by what means, any of the hereinbefore-mentioned matters, articles, or things may be obtained or made, and every letter upon the envelope of which, or postal card upon which, indecent, lewd, obscene, or lascivious delineations, epithets, terms, or language may be written or printed, are hereby declared to be non-mailable matter, and shall not be conveyed in the mails, nor delivered from any post-office, nor by any letter-carrier; and any person who shall knowingly deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be non-mailable matter, and any person who shall knowingly take the same, or cause the same to be taken, from the mails, for the purpose of circulating or disposing of, or of aiding in the circulation or disposition of the same, shall be deemed guilty of a misdemeanor, and shall, for each and every offence, be fined not less than one hundred dollars nor more than five thousand dollars, or be imprisoned at hard labor not less than one year nor more than ten years, or both, at the discretion of the court."

The indictment charges, in substance, that there was delivered to the defendant, in the city of St. Louis, on ——, etc. (naming the time), a certain written letter, contained in an envelope, in the words following, namely: "Butler, Ga., Nov. 14th, 1877. Dr. Whittier: Can you furnish me an absolutely sure way to prevent conception? What will it cost? How can I get it? What is the price of your 'Marriage Guide?' Address, Miss Nettie G. Harlan, Butler, Georgia." Which letter on the envelope, was addressed thus: "Dr. Whittier, St. Louis, Mo., No. 617 St. Charles St."

The question before the court arises on a motion by the defendant to quash the indictment, and, for the purpose of determining the law of the case, the parties have agreed that the facts in respect to the allegations in the indictment are as hereinafter stated, and that these facts are to be considered by the court on the motion to quash the indictment as if they were alleged in it, namely: That the letter described in the indictment as having been written by Miss Nettie G. Harlan, at Butler, Georgia, was in fact written by Robert W. McAfee, who then was, and still is, the agent of a society known as "The Society for the Suppression of Vice," and that in the acts done by him, as herein set out, he was acting as such agent; that there is no such person as Nettie G. Harlan; that, by and with the consent of the United States postal officers, the said letter was enclosed in a sealed envelope, addressed as in the indictment described, having a three-cent postage stamp upon the face thereof, and said envelope upon its face was post-marked "Butler, Georgia, November 14th;" that said letter was not mailed as postmarked, at Butler, Georgia, but was postmarked at St. Louis, Missouri, with a marking-stamp furnished said McAfee by the secret service of the United States post-office department, and that said postmark was affixed by the said McAfee, with the said marking-stamp so furnished, in the presence, and with the consent, of the said officers; that thereupon said letter, in said envelope so sealed, postmarked, addressed, and stamped, was by said McAfee delivered to the officers of the St. Louis post-office, and by them placed in the mail, and, in due course of mail, was delivered by James Haran, a letter-carrier of the postal service of the United States, from the post-office in St. Louis, at the office of the defendant, in the city of St. Louis, No. 617 St. Charles street, and that the same was there received by a person having charge of said office; that said letter was written and sent

---

[1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 6 Reporter, 260, contains only a partial report.]

in the manner aforesaid for the purpose of procuring information whether the defendant was engaged in the business of sending through the mail non-mailable matter, and information, also, as to where, how, and by whom, or by what means, the matters, articles, and things declared by the acts of congress as non-mailable were being obtained.

It is further stipulated, for the purpose of the motion to quash the indictment, that the letter charged in the indictment as having been written in reply to the said letter of Miss Nettie G. Harlan by the defendant was by the defendant deposited, or caused to be deposited, in the St. Louis post-office, and the same was never sent to Butler, Georgia, nor delivered to Miss Nettie G. Harlan; but the said letter was taken out of the said St. Louis post-office by the postal officers, or said McAfee, for the purpose, singly and solely, of procuring information aforesaid, and detecting the defendant, if guilty of carrying on the business of knowingly depositing, or causing to be deposited, non-mailable matter in the United States mail. The allegation in the indictment is that the defendant answered the letter which he received, purporting to be from Miss Nettie G. Harlan, and deposited his answer, contained in an envelope, in the post-office at St. Louis, and that the letter thus written and deposited by the defendant in the post-office is in the words following, namely: "Miss Nettie G. Harlan, Butler, Ga.: I have what you desire. It is perfectly safe, sure, and healthful, and can be easily used. The price is ten dollars, sent by express only on receipt of price. Price of 'Marriage Guide' is fifty cents. Respectfully, C. Whittier, M. D."

The indictment then proceeds to aver that said letter was knowingly deposited by the said defendant in the post-office at St. Louis, and then and there gave information in the manner and form aforesaid, that a certain article or thing designed and intended for the prevention of conception (a more particular description of which said article said jurors are unable to give) might be obtained from him, the said Clarke Whittier, contrary to the form of the statute in such case made and provided.

On the indictment, as thus framed, in connection with the foregoing facts, which it is stipulated shall, for the purpose of this motion, be considered as a part of the indictment, with the same effect as if they had been alleged therein, a motion is made to quash; and the question which counsel desire to have decided is, whether, if these facts appear as they are alleged and agreed to exist, the prosecution can be sustained, under this statute, for the offence charged in the indictment.

W. H. Bliss, Dist. Atty., and J. P. Ellis, for the United States.

D. P. Dyer and David Wagner, for defendant.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. The question submitted has given the court some difficulty. Certain propositions and principles will aid in its correct decision:

1. Statutes creating crimes will not be extended by judicial interpretation to cases not plainly and unmistakably within their terms. If this rule is lost sight of, the courts may hold an act to be a crime when the legislature never so intended. If there is a fair doubt whether the act charged in the indictment is embraced in the criminal prohibition, that doubt is to be resolved in favor of the accused. U. S. v. Morris, 14 Pet. [39 U. S.] 694; U. S. v. Wiltberger, 5 Wheat. [18 U. S.] 76; U. S. v. Sheldon, 2 Wheat. [15 U. S.] 119; U. S. v. Clayton [Case No. 14,814].

2. Congress has, it is conceded, no power to make criminal the using of means to prevent conception, or to procure abortion, etc., in the several states. That power belongs to the respective states. But congress has plenary power over the mails and postal service, and may, undoubtedly, declare what shall not be mailable matter, and punish violation of its criminal enactments in this regard. The protection of the public morals in such cases is incidental to the protection of the mails. U. S. v. Bott [Case No. 14,626]; In re Jackson [96 U. S. 727], Oct. term, 1877. The statute upon which this indictment is founded must be construed with reference to this limitation upon the federal function and the supposed federal purpose in the enactment of the statute. Congress meant by this legislation to prevent the mails from being used to transport matter corrupting to the public morals. Re Jackson, supra.

3. Where persons are suspected of being engaged in the violation of criminal laws, or of intending to commit an offence, it is allowable to resort to detective measures to procure evidence of such fact or intention. Many frauds upon the postal, revenue, and other laws are of such a secret nature that they can be effectually discovered in no other way. Accordingly, there have been numerous convictions upon evidence procured by means of what are called "decoy letters"—that is, letters prepared and mailed on purpose to detect the offender—and it is no objection to the conviction, when the prohibited act has been done, that it was discovered by means of letters specially prepared and mailed by the officers of the government, and addressed to a person who had no actual existence. The books contain many cases where such convictions have been sustained. U. S. v. Cottingham [Case No. 14,872]; Reg. v. Rathbone, 2 Moody, Crown Cas. 310, Car. & M. 220; Reg. v. Gardner, 1 Car. & K. 628; Reg. v. Williams, Id. 195; Reg. v. Mence, 1 Car. & M. 234.

There is a class of cases in respect of larceny and robbery in which it is held that

where one person procures, or originally induces, the commission of the act by another, the person who does the act cannot be convicted of these particular crimes, although he supposed he was taking the property without the consent, or against the will, of the owner. Archb. Cr. Prac. & Ev. 364; Rex v. Eggington, 2 Bos. & P. 508; State v. Covington, 2 Bailey, 569; Dodge v. Brittain, Meigs, 84, 86; Alexander v. State, 12 Tex. 540; 3 Chit. Cr. Law, 925; 2 East, P. C. 665; 1 Bish. Cr. Law (5th Ed.) §§ 262, 263. The reason is obvious, viz.: The taking in such cases is not against the will of the owner, which is the very essence of the offence, and hence no offence, in the eye of the law, has been committed. The offender may be as morally guilty as if the owner had not consented, but a necessary ingredient of legal guilt is wanting. This is strikingly shown by Rex v. McDaniel, Fost. Crown Law, 121, 2 East, P. C. 665, where "Salmon, McDaniel, and others conspired to procure two persons, ignorant of the design, to rob Salmon on the highway, in order that they might obtain the reward at that time given for prosecuting offenders for highway robbery. Salmon, accordingly, went to the particular place fixed upon, with some money, and the two men who were procured, being led there by one of the conspirators, robbed him, and they were afterwards prosecuted and convicted; but the conspiracy being afterwards detected, the conspirators were indicted as accessories before the fact to the robbery, and, the facts being found by a special verdict, the case was argued before all the judges, who held that the taking of Salmon's money was not a larceny, being done not only with his consent, but by his procurement." But this principle must be limited to the cases where the consent will, as a matter of law, neutralize the otherwise criminal quality of the act. 1 Bish. Cr. Law (5th Ed.) § 262. Thus, where a prosecution was founded on an act of the legislature imposing a penalty on any one who should deal or traffic with a slave without a written ticket or permit from the owner, it is held that the offence is consummated, although the trading was done by the slave in pursuance of instructions of the owner, and in his presence, when the accused was ignorant of such instructions and presence. The reason is that, "like Eggington's Case, supra, this is a contrivance to detect the offender." State v. Covington, 2 Bailey, 569, 573. See also, Reg. v. Williams, 1 Car. & K. 195; Reg. v. Gardner, Id. 628.

The facts in the case now under consideration show that the defendant is as morally guilty as if the letter he was answering had been written by a person seeking the prohibited information, and not by a detective. But I am of the opinion that these facts do not clearly bring the case within the particular clause of the statute on which the indictment is founded. The indictment charges that the defendant knowingly deposited in the mail a letter giving information where, how, and of whom an article or thing designed and intended to prevent conception could be procured. This was in answer to a fictitious letter of inquiry. The letter written and mailed by defendant was addressed to a person who had no existence. On its face it did not show that it was within the prohibited statute. If it had been suffered to go through the mail to the place to which it was addressed, it would not have been called for, but would have been sent to the dead-letter office, and could not have given to any person the prohibited information. The defendant doubtless intended to give the inhibited information, but the statute does not apply to a letter merely intended by the writer to give such information, but to a letter " 'actually' giving the information." If a letter of inquiry seeking the prohibited information had been written by an actual person, although under a feigned name, an answer in reply, giving such information, would present a case distinguishable, it would seem, from the one under consideration.

I place my judgment in this case upon the single ground that the sealed letter written by the defendant, addressed to a person who had no existence, and which on its face gave no information of the prohibited character, and which is brought within the statute only by the fictitious letter of inquiry written by a detective, is not the "giving of information" within the meaning of the statute. At all events, it is not certain that congress intended to punish such an act; and, therefore, upon the principle above mentioned, that criminal statutes are not to be extended by judicial construction to cases not clearly and unmistakably within their terms, my judgment is that this prosecution, on the admitted facts, cannot be sustained. It is a case of clear moral guilt, but not of legal criminality. There is no legal crime committed, although the defendant did not know of the fact which deprived his act of its criminal quality. 1 Bish. Cr. Law (5th Ed.) § 262. In this respect the case falls within the principle strikingly illustrated by Rex v. McDaniel, above referred to.

In order to prevent misconception of the decision now made, it may be proper to add that we only decide the narrow and single point that the letter written and deposited by the defendant did not give the prohibited information, and hence is not within the statute. It would present a different case for consideration if the letter written and deposited by the defendant had been capable, into whosesoever hands it might have fallen or come, of imparting the prohibited information.

We do not decide that decoy letters cannot be used to detect persons engaged, or suspected to be engaged, in violating criminal laws, but recognize the doctrine that such letters may be so used. We only decide that the defendant, by his answer to the decoy letter, did not, under the special circumstan-

ces of the case, bring himself within the criminal prohibition of the act of congress.

It would also present a different case if the letter of inquiry had been written by some person actually seeking the prohibited information for immoral purposes, although written under an a.-sumed name, and the defendant had mailed such a letter as he actually wrote and deposited in this case. Congress has not, and probably cannot, make the business in which it is claimed the defendant is engaged, viz., of furnishing to whoever may apply therefor the means of preventing conception, to procure abortion, etc., illegal, and punish the same; but the state of Missouri may do so. If the state has done so, and the defendant is suspected of being engaged in the illegal business, undoubtedly decoy letters may be used for the purpose of discovering his violation of the law, as the cases above cited show. And if, in answer to a decoy letter, the prisoner deposits in the mail any written or printed card, circular, etc., which on its face gives information of the prohibited character, there is nothing in this decision which precludes us from holding such a case, if it should arise, to be within the act of congress.

On the admitted facts, I am of opinion, for the reasons above given, that the prosecution cannot be maintained.

TREAT, District Judge, concurring. The questions involved in this case are extremely difficult of solution. It is necessary to discriminate with care, on the one hand, between the offence charged against the postal laws and the modes of proving the same, and on the other hand, the offence stricken at by state statutes and the moral wrong and outrages implied in the vocation or business denounced.

The sense of indignation against such vocation or conduct should not permit a violation by the courts of established rules of law, or an unlawful exercise of jurisdiction, nor the countenance of unlawful contrivances to induce or manufacture crime. The postal system is designed by statute, for obvious reasons, to observe and enforce the sanctity of private correspondence. Severe penalties are denounced against all who intercept letters, etc., with a view of prying into their secrets. Rev. St. § 3892.

Section 3893, as amended (19 Stat. 90, c. 186), under which this indictment is found, prohibits the conveyance through the mails, or delivery from any post-office, or by any letter-carrier, of any printed circular, or notice of any kind, giving the inhibited information, directly or indirectly. It then proceeds as follows: "And any person who shall knowingly deposit, or cause to be deposited, for mailing or delivery, any such non-mailable matter, and any person who shall knowingly take the same, or cause the same to be taken, from the mails, for the purpose of circulating or disposing of, or of aiding in the circulation or disposition of the same, shall be deemed guilty," etc.

Thus the section provides for two classes of offenders, viz.: Those who deposit knowingly, for mailing or delivery, such non-mailable matter, and also those who knowingly take the same from the mails for the purpose stated. The various acts of congress in pari materia must be considered in connection with constitutional limitations. It is for preserving the purity and privacy of the postal service that congress has passed the many laws to which reference is made; yet, if non-mailable matter is not to be delivered, how are the contents of a sealed letter to be ascertained?

It must be conceded that contrivances to induce crime (the contriver confederating for the purpose with the criminal) are most rigidly scrutinized by the courts, even when the contrivances are lawful in themselves. But when the contrivances are of an unlawful character, should courts not be even more strict?

Again: The statute denounces the deposit of forbidden matter in the mails which "gives" (not which is intended or designed to give) "information, directly or indirectly," etc. In this case the letter deposited did not, of itself, give any such inhibited information; it was not addressed to any person in existence, and if, in the ordinary course of the mails, it had reached its destination, it would have been delivered to no one, for there was no one to whom to deliver, but would have passed to the dead-letter office. To make the letter bear an interpretation against the prohibitions of the statutes, it is necessary to examine the same in connection with the fictitious or decoy letter, bearing simulated postmarks, and also to say that the letter addressed to the fictitious person could, despite section 3892, be lawfully taken from the mails after it was deposited therein, and before it had been delivered to the person to whom addressed, "with the design of prying into the business or secrets of another."

No case, after most diligent search, has been found which disposes exactly of the point under consideration. In my judgment, it must be settled in the light of elemental principles.

No court should, even to aid in detecting a supposed offender, lend its countenance to a violation of positive law, or to contrivances for inducing a person to commit a crime. Although a violation of law by one person in order to detect an offender will not excuse the latter, or be available to him as a defense, yet resort to unlawful means is not to be encouraged. When the guilty intent to commit has been formed, any one may furnish opportunities, or even lend assistance, to the criminal, with the commendable purpose of exposing and punishing him. But no case has been found which goes beyond these views. There are legitimate means and jurisdictions where offences can be tried and punished, and the

public weal is best subserved where rigid adherence thereto is enforced.

Motion sustained.