### UNITED STATES *v.* HANOVER.

#### (*S. D. Ohio.* August, 1883.)

This case was submitted several weeks ago. One of the questions involved presented much difficulty, which was increased by the conflict in the decisions thereon. After I had examined the matter with much care, I learned that the question was before Judge DRUMMOND on error. I have had the benefit of the able briefs of counsel in that case, and being advised by Judge DRUMMOND that he would shortly announce his decision, I thought it best to hold this case until that time. Having received his opinion[1] a few days ago, I am now ready to dispose of this case.

The defendant is charged with depositing in the Cincinnati post-office, for mailing and delivery, an obscene, lewd, and lascivious writing, to-wit, a letter, addressed to one Mrs. Kate Walker, in said city, which said writing was of an indecent character. The prosecution is brought under section 3893, Rev. St., as amended by the act of July 12, 1876, which provides that "every obscene, lewd, or lascivious book, pamphlet, picture, paper, *writing*, print, or other publication of an indecent character, * * * is hereby declared to be non-mailable matter, * * * and a person who shall knowingly deposit, * * * for mailing or delivery, anything declared by this section to be non-mailable matter," shall be punished, etc. Testimony was introduced by the government showing that the defendant wrote and deposited the letter as charged. It also appeared that the letter was inclosed in a sealed envelope. Upon the conclusion of the government's testimony in chief, counsel for defendant moved for the discharge of the accused, and upon that motion finally submitted the case.

Counsel urged that the motion should be granted:

(1) Because the letter is not obscene, lewd, lascivious, or of an indecent character. While it may be that all the words used in the letter, taken by themselves, would be entirely harmless, yet viewed as a whole the letter is grossly lascivious and indecent. The words should not be passed upon separately, but in the connection and association in which the defendant has placed them. And without going into the matter more fully, it is sufficient to say that I am satisfied this objection is not well taken.

(2) Because the statute does not embrace a sealed letter. It is insisted that a comparison of the present with cognate provisions of the statute, shows that congress did not intend to exercise any censorship over the contents of sealed letters; that congress meant to protect the post-office employes and others in whose hands indecent articles might come, rather than the person to whom the prohibited articles might be sent, and that to come within the statute the article must be a "publication."

Judge DEADY, in *U. S.* v. *Loftis,* 12 FED. REP. 671, and U. S. Com'r HILL, in *U. S.* v. *Williams,* 3 FED. REP. 484, had held, substantially, that such was the correct construction of the statute. Opposed to that view was the decision of Judge SAMUEL H. TREAT, of the southern district of Illinois, in *U. S.* v. *Gaylord,* notes of his oral opinion having been furnished me. Thus stood the decisions when this case was submitted. At first I was strongly inclined

---

[1] *U. S.* v. *Gaylord, ante,* 438.

to the former view and to discharge the prisoner; but a fuller examination has satisfied me that such is not the true construction of the statute. Some of the reasons may be briefly stated.

I think congress designed to prevent the use of the mail for carrying obscene matter, in whatever form it might be, and thus incidentally to protect the receiver of a letter; that it intended more than merely preventing such material going into the mail exposed to the view of those into whose hands the packages might pass. As was said by Judge BENEDICT in *U. S.* v. *Foote,* 13 Blatchf. 418, 420,—a prosecution under the clause of section 3893, punishing the sending of articles to prevent conception, etc.,—"The object of the statute is not to protect the morals of post-office employes, but to prevent the mails of the United States from being the effectual aid of persons engaged in a nefarious business, by being used to distribute their obscene wares. To exclude from the statute all letters which, to the outward appearance, are harmless, would destroy its efficacy, for everything then would take the form of a sealed letter. It is not the form in which the matter is mailed, but the character of the matter itself, which fixes the criminality of the act."

The statute upon the subject of obscene matter, prior to the amendment of 1876, included only "books, pamphlets, pictures, papers, prints, or other publications," but by the amendment "*writing*" was added to the enumeration. That is a very comprehensive term. A written letter is certainly a writing. See Webst. Dict. "Letter," "Writing." Congress undoubtedly had a purpose in making the amendment. Can it be that it was intended to apply only to the limited instances in which writings are sent through the mails unsealed, or only to such w itings as are not, in any sense of the term, letters? I think not.

It can hardly be questioned that a "book, pamphlet, picture, paper, or print" would still be unmailable, although inclosed in a sealed package. In *U. S.* v. *Foote, supra,* a sealed letter was held to be within the clause of section 3893, prohibiting the mailing of articles to prevent conception, etc. In *Re Jackson,* 14 Blatchf. 245, Judge BLATCHFORD held that section 3894, punishing the use of the mails for transmitting letters or circulars concerning lotteries, embraced a sealed letter relating thereto. Why should a "writing" be taken out of the statute merely by sealing the envelope?

To give the effect claimed to the phrase "or other publication," is to take away, by general words, that which is given in particular. That is opposed to a recognized canon of statutory construction. "It is a rule of right reason that general words may be qualified by particular clauses of a statute, but that, on the other hand, a thing which is given in particular, shall not be taken away by general words." Sedgw. St. & Const. Law, 423. But beyond this, grant that there must be a "publication" of the article, yet the sending of a letter to the person to whom it is addressed, although in a sealed envelope, is a publication. "Every communication of language, by one to another, is a publication." Townsh. Sland. & Lib. (3d Ed.) p. 146, § 95. And the sending of slanderous matter merely to the person slandered, is a publication within the law of criminal libel. 3 Greenl. Ev. p. 183, § 169.

The security of private correspondence is in no way endangered by this construction of the statute. No right of search is possessed by the postal authorities, except by obtaining the proper warrant. *Ex parte Jackson,* 96 U. S. 727. But persons outraged by being made the recipients of the obscenity some miscreant has sent them, should be able to effectually punish any one using the mails for such purpose.

Undoubtedly the defendant is entitled to the benefit of doubt as to the proper construction of the statute. But courts are not established to seek out some loop-hole through which criminals may escape. If the language used by the legislature fairly includes the evil complained of, it should be so construed.

But I will not extend this further. The learned and elaborate opinion of Judge DRUMMOND (concurred in by Justice HARLAN) affirming the judgment in *U. S.* v. *Gaylord, supra,* (see Chi. Leg. News, Aug. 11, 1883, p. 392,) fully sustains the conclusion I have reached.

The defendant will be held to answer to the grand jury.

                                   J. C. HARPER, U. S. Com'r.

---

Congress has power, under the constitution, to provide what shall be mailable matter, and to prescribe punishment for mailing prohibited matter.[1] It is not necessary that an indictment under section 3893, in respect to a book, should set forth *in hæc verba* the alleged obscene book, or the alleged obscene passages in it, if the indictment state that such book is so indecent that it would be offensive to the court, and improper to be placed on its records, and that, therefore, the same is not set forth in the indictment, and if the book is sufficiently identified to apprise the defendant what book is intended.[2] An indictment for introducing obscene pictures into a school need not particularly describe the pictures.[3] An indictment for depositing for mailing a notice of where an article for the prevention of conception may be obtained should set out the notice, unless it cannot be copied without great inconvenience, or is so obscene as to be unfit to go upon the public records.[4] Where there is any reason for a failure to set out the notice, apparent upon the face of the papers or indictment, the court will consider it.[5] But where there has been a failure, without excuse, to set out the instrument in the indictment, it will not be admissible in evidence.[6] An indictment that sets out the obscene publication according to its purport and effect, and not *in hæc verba*, is fatally defective.[7] The court of appeal of England, in the celebrated *Bradlaugh and Besant Case,* held that in an indictment at common law for publishing an obscene book, where there was no reason alleged in the indictment for omitting to set it out, that it is not sufficient to describe the book by its title.[8] *U. S.* v. *Bennett* [9] passes upon a variety of questions of practice under section 3893, Rev. St.

The test of obscenity is whether the tendency of the matter is to deprave and corrupt the morals of those into whose hands a publication of that sort may fall.[10] The term "indecent" in section 3893, in connection with the offense defined in said section, taken with the history of the legislation upon the subject, means immodest, impure; and language which is coarse, or unbecoming, or even profane, is not within the inhibition of the act.[11]

The act of July 12, 1876, in respect to mailing matter giving notice as to the prevention of conception, etc., construed, and *held* not to extend to a sealed letter written by the defendant to a person who had no existence, in answer to a decoy letter by a detective, and which on its face gives no information of the prohibited character.[12] Knowingly depositing in the mail, by the publisher, a newspaper containing a quack medical advertisement giving information how and where articles for the production of abortion and prevention of conception could be obtained, *held,* to be a violation of section 3893.[13]

                                                *\*\**

[1] Ex parte Jackson, 97 U. S. 727; U. S. v. Bennett, 16 Blatchf. 338.

[2] U. S. v. Bennett, 16 Blatchf. 333.

[3] State v. Pennington, 5 Lea, (Tenn.) 506. See, also, Com. v. Holmes, 17 Mass. 336; Com. v. Sharpless, 2 Serg. & R. 91; People v. Girardin, 1 Mich. 91; State v. Brown, 1 Williams, (Vt.) 619.

[4] U. S. v. Kaltmeyer, 16 Fed. Rep. 760.

[5] Id.

[6] Id.

[7] Com. v. Tarbox, 1 Cush. 66.

[8] Bradlaugh v. The Queen, L. R 3 Q B. Div. 607. See, also, Knowles v. State, 3 Dıy, 103; State v. Hanson, 23 Tex. 232; People v. Hollenbeck. 52 How. Pr. 502.

[9] 16 Blatchf. 338.

[10] U. S. v. Bennett, 16 Blatchf. 333.

[11] U. S. v. Smith, 11 Fed. Rep. 663.

[12] U. S. v. Whittier, 5 Dill. 35. Also see *quære* of Judge McCRARY upon this question in U. S. v. Kaltmeyer, 16 Fed. Rep. 760.

[13] U. S. v. Kelly, 3 Sawy. 566.