UNITED STATES v. RAPP.[1]

(*Circuit Court, N. D. Georgia.* March Term, 1887.)

1. POST-OFFICE—STEALING AND EMBEZZLING MAIL MATTER.
    A letter or packet, to come within the provisions of sections 5467 and 5469 of the Revised Statutes, must get into the mail in some of the ordinary ways provided by the postal authorities, and become fairly and reasonably part of the "mail matter," under control of the postal department.
2. SAME—"DECOY."
    A "decoy or test" was prepared as follows: A post-office inspector wrote a letter, placed it in an envelope, sealed, and directed it to a fictitious person, and to a place where there was no post-office; then wrapped it up in a newspaper, and inclosed both letter and paper in an ordinary newspaper wrapper, said wrapper sealed, and properly stamped, and directed as the envelope inside. This packet was then handed to a post-office official, to be placed by him, as a "decoy or test," in what is known as the "nixes basket," a receptacle for apparently worthless and unmailable matter, said "nixes" to be opened and examined by a postal employe, who was to send any letter or article of value found therein to another official, to be forwarded to the dead-letter office. *Held*, that this was not a *mailing* of the packet, and it did not become "mail matter," in the meaning of sections 5467, 5469, Rev. St.
3. SAME.
    Such packet, so placed in the post-office, and in the "nixes basket," is "not intended to be conveyed by mail," in the meaning of said sections.
4. SAME.
    For an employe in the postal service to destroy the packet and letter so placed in said "nixes basket," and to appropriate its contents, is not a violation of said sections.

[1]Reported by Benj. H. Hill, U. S. Atty.

5. SAME—INTENTION OF SENDER.
> Section 5468, Rev. St., construed to cover cases where mail matter has been deposited in the post-office in the ordinary way, and no proof is admissible as to the intention of the party sending it.

Indictment under section 5467, for destroying letter, embezzlement, etc.

The defendant was employed in the post-office at Atlanta, Georgia, as distributing clerk, and had so been employed for years. He also had charge of what was known as "nixes;" the term "nixes" being interpreted as meaning matter received in the post-office which could not be forwarded through the mail because incorrectly, insufficiently, or illegibly addressed, or addressed to points where there was no post-office. The evidence showed that it was the duty of the employe in charge of the "nixes" to sort them, the letters to be sent to the nixie clerk, who was to forward them, unopened, to the dead-letter office, the packages to be opened, and, if any letters or articles of value were found in them, to be sent to the nixie clerk, as above.

The post-office officials had received complaints of the loss of valuable letters, probably in the Atlanta office. In order to find out where the loss occurred, and to detect the guilty employe, Post-Office Inspector Henry Booth prepared a decoy or test letter. This letter was addressed to Miss Pattie F. Brooks, La Villa, Florida, the name and post-office fictitious. In this letter the inspector, after marking the same for easy identification, placed one dollar treasury note, and 25 cents in silver coin. This letter was sealed and wrapped up in a newspaper, and both letter and paper inclosed in an ordinary paper wrapper. On the paper wrapper was placed two cents postage in addition to the one cent postage already on the wrapper. The ends of the newspaper extended outside the paper wrapper, and had the appearance of being simply a newspaper prepared for the mail. This package was sealed, and addressed as the letter inside. The package was by Mr. Booth, the inspector, delivered to Mr. Cabaniss, superintendent of the mailing department of the Atlanta office. The package was delivered to Mr. Cabaniss late in the evening. Suspicion had been directed towards the defendant, and the next morning after receiving the package Mr. Cabaniss placed it in the "nixes basket;" this "nixes basket" being a receptacle in the post-office for unmailable and apparently worthless matter, and was in the charge of the defendant, whose duty it was to open said packages, and, if any letters or valuable article were found therein, to deliver them to the "nixes" clerk. The defendant finished his work at the nixes basket, and went to dinner. Supt. Cabaniss, who had been watching the defendant, and had noticed certain suspicious actions, at once went to the nixes basket. He found in the bottom of the sack, where worthless papers were to be placed, and covered up by papers, the pieces of the letter and wrapper, and the newspaper with only one end torn off, the letter and wrapper torn into small pieces. He gathered them up, and took them to the inspector. When the defendant returned from dinner he was asked by Mr. Cabaniss in his room, where the inspector was waiting. All three went to the lat-

ter's office, and there defendant was shown the pieces of letter, and charged with destroying it, and taking the money. He at first denied having the money, but eventually produced it, and handed it to the inspector.

This was the evidence for the government. Defendant, in his own behalf, testified that he did not intend to steal the money, but did intend to deliver it to the proper official. He also proved previous good character.

On the conclusion of the evidence, counsel for defendant asked the court to direct a verdict for the defendant. The grounds for such request are fully stated in the opinion of the judge.

*Benj. H. Hill*, U. S. Atty., for the United States.

*Gartrell & Ladson*, for defendant.

NEUMAN, J. Under the views I entertain of the case, the intention of the defendant in destroying the letter or taking the money is immaterial. The question is whether or not a prosecution can be maintained under sections 5467 and 5469 of the Revised Statutes of the United States, on the facts as shown by the government. The indictment in this case was drawn under section 5467, but, in the course of his argument, the district attorney claims that the prosecution may be maintained under either of the sections named, the indictment being sufficient under both sections. Section 5467 applies, in express terms, "to persons employed in any department of the postal service," and section 5469 to "any person," and probably, by its terms, to every person, whether connected with the postal service or not. Where the two sections state the same offense, however, and that offense is charged against a person employed in a department of the postal service, it should be considered under section 5467. This view would be true under the case of *U. S.* v. *Marselis*, 2 Blatchf. 108, where the question was discussed.

Both of these sections are intended to protect from theft, and improper interference, what may be termed "mail matter;" that is to say, letters, packets, etc., received for transmission, and to be transmitted, by post to the person to whom such matter is directed. This packet, it is conceded, was placed in the basket spoken of, not with intention that it should be taken through the post-office and delivered to any person, but with the intention that in or about the basket where it was so placed it should be torn open by the defendant, or some other employe having like duties. It was not received in the post-office in any of the regular ways that letters or packets are received. It was not to be taken anywhere, and delivered to any person. It was to be torn open where it was placed. It is stated for the government that the envelope inside the package should have gone to the dead-letter office; but, if this is true, I do not think it changes the case materially.

It is claimed by counsel for the government that, under the facts recited, the language of the sections of the Revised Statutes named, is broad enough to cover and embrace the case. He claims that this case comes especially within the latter part of section 5467, which reads in this way: "Any such person [that is, any person employed in any de-

partment of the postal service] who shall steal or take any of the things aforesaid [among which are pecuniary obligations of the government] out of any letter, packet, bag, or mail of letters, which shall have come into his possession either in the regular course of his official duties, or in any other manner whatever, and provided the same shall not have been delivered to the party to whom directed, shall be punished," etc.; and he lays especial stress upon the language, "or in any other manner whatever," descriptive of the way in which the thing stolen shall have come into his possession. It is argued, in reply, that the language, "any of the things aforesaid," must be considered in connection with the language in the early part of the section, "which was intended to be conveyed by mail," etc., and that, no matter how broad a construction may be given to the statute in reference to the manner in which the letter shall come into his possession, still it must be a letter or packet "intended to be conveyed by mail." Whether this latter view be correct or not, and it has much force, the language, "and provided the same shall not have been delivered to the party to whom it is directed," which immediately follows the words, "or in any other manner whatever," would seem to require the same construction that the argument of defendant's counsel would require, and make the section refer only to letters, packets, etc., received to be delivered by mail.

But it is argued for the government that section 5467 is amplified when construed by and according to section 5468, which is an interpretation section. I do not think the package in this case is such a "packet" or "letter" as is referred to therein. But, further, it seems to me that this section was intended to cover cases where mail matter has been deposited in the post-office, or branch post-office, in the ordinary way; and no proof is accessible as to the intention of the sender or person so depositing it, and to make it a legal presumption that all matter thus deposited was "intended to be conveyed by mail;" and, furthermore, I do not believe that, under this section, it can be held that the packet was intended to be conveyed by mail, when the proof in this case for the government shows that there was no such intention, but, as stated above, that the intention was that the packet should be torn up in the basket where it was placed. Therefore I do not believe that section 5467, construed alone, or in connection with and as interpreted by section 5468, is violated by the facts in this case. I hardly think it necessary to refer to section 5469, for, if this case can be maintained at all, it seems to me, it must be under section 5467, the terms of which make it more applicable to the facts than section 5469. But section 5469, as will be seen by an examination, refers in terms to interference with or stealing "mail matter," and my opinion is that this package claimed to have been opened by defendant was not "mail matter," in a fair interpretation and construction of the term. It was not even in the mail. It was placed with a lot of other matter that had been thrown aside and discarded from the mails as matter which could not be conveyed by mail, and was to be destroyed.

I must construe the language of this criminal statute by a rule of law

that is axiomatic,—strictly in favor of the defendant. See *U. S. v. Whittier*, 5 Dill. 35, and cases cited. But, construing it according to its. fair and ordinary meaning, can the words "mail matter" be held to include this package? I think not, and this last view of the matter, in my opinion, applies to both of these sections. As stated above, I think the whole of this law, taken together, each section separately, or by paragraphs, refers to mail under the protection of the government, and the postal authorities as such. I do not hold that what is called in the testimony in this case a "decoy" or "test" letter, or the contents thereof, might not, when regularly mailed, be the subject of embezzlement, and punishable under these sections. But I think it should get into the mail in some of the ordinary ways provided by the postal authorities, and become fairly and reasonably part of the "mail matter," under control of the postal authorities.

In the case of *U. S. v. Cottingham*, 2 Blatchf. 470, cited by the district attorney, it was held that the fact that the letter mailed was a decoy letter would not prevent it being the subject of embezzlement. But it appears that the letter in that case was mailed, and presumably, from the statement of the case, regularly mailed.

Also in the case of *U. S. v. Foye*, 1 Curt. 364, it appears that the letter was regularly mailed. The judge in his decision uses the following language: "This letter was mailed precisely like other letters."

The case of *U. S. v. Whittier*, 5 Dill. 35, cited above, was a case for a violation of a different part of the postal laws, but the opinions of Judges DILLON and TREAT are interesting in this connection as to the manner in which these statutes should be construed, the matter of decoy letters being also discussed. No case from any of the courts of the United States have been cited upon the precise points made in this case.

Some English cases have been referred to which are in point. In the case of *Queen v. Gardner*, 1 Car. & K. 628, it was held, in effect, that the embezzlement of a decoy letter, or its contents, was not stealing a "post letter," within the statute, (1 Vict. *c.* 36,) but the taking of the contents was larceny. This case was subsequently doubted in the case of *Queen v. Young*, 1 Denison, Cr. Cas. 198; but, under this case, even a decoy letter must be deposited in the ordinary way. In the case of *Queen v. Rathbone*, 2 Moody, Cr. Cas. 242, it was held as follows:

"An inspector secretly put a letter, prepared for the purpose, containing a sovereign, among some letters which a letter carrier, suspected of dishonesty, was about to sort. The letter carrier stole the letter and sovereign. Held, not rightly convicted under 1 Vict. 31, (36,) § 26, of stealing a post-letter, such letter not having been put in the post in the ordinary way, but rightly convicted of larceny of the sovereign laid as the property of the postmaster general."

In the case of *Queen v. Shepherd*, 25 Law J. 1856, (N. S.) Com. Law. 52, last division of volume, the head-notes, which give the facts and conclusions of the court, are as follows:

"The post-office authorities, having suspicions of the dishonesty of the prisoner, who was a sub-sorter of letters at the general post-office, London, caused

a letter containing marked money to be prepared, directed, sealed, and stamped. This letter one inspector delivered in at the window of the outer hall of the general post-office to another inspector, who handed it over to a third, who kept it locked up all night, and, on the following morning, gave it to a sorter to put in among the letters which the prisoner had to sort. This was done. The prisoner secreted the letter, opened it, and the marked money was found on him. The ordinary mode of posting letters at the general post-office is by putting them into the letter-boxes there. It did not appear that either the inspector who received the letter in at the window, or the inspector who kept it all night, were authorized by the course of their official duty so to receive or keep letters. Held, that this letter was not a post-letter, within the meaning of the statute, (1 Vict. c. 36,) and that the prisoner could only be found guilty of the simple larceny of stealing the money."

The statute of 1 Vict. under which the case arose, has an interpretation clause which says: "A post-letter [shall mean] any letter or packet, transmitted by the post under the authority of the postmaster general, and shall be deemed a post-letter from the time of its being delivered to the post-office to the time of its being delivered to the person to whom it is addressed;" and the "post-office" is defined any house, building, room, or place where post-letters are received or delivered, or in which they are assorted, made up, or dispatched. It will be seen, therefore, that this statute, while differing in its terms from the section of the Revised Statutes under consideration, is fully as broad in its scope and bearing. An examination of these cases has therefore strengthened me in my opinion as to the proper construction to be placed upon sections 5467–5469, Rev. St. U. S., as above expressed.

It may be that the method employed by the officials in this case is very proper to unveil and disclose a dishonest official, and thereby rid the department of such a person, and it may be that a prosecution for larceny, under proper indictment, would be sustained under the facts stated; but that it makes a case of embezzlement of the contents of a letter placed in the post-office, under the statute cited, I do not believe. The very strongest view I could take of this case in behalf of the government would leave doubt—very grave doubt—on my mind as to the correctness of a conviction, should the jury believe the prisoner to have acted with guilty intent, and, even in this view, it would be improper for me to permit a conviction. Believing as I do, I am constrained to direct the jury to return a verdict of not guilty.